FILED & JUDGMENT ENTERED
Steven T. Salata

May 20 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Laura T. Beyer
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

IN RE:

SHANNON BROOKE BARKER,         CASE NO. 12-51160
                               CHAPTER 13
    DEBTOR.

SHANNON S. BARKER,             ADV. PROCEEDING NO. 13-05027

    PLAINTIFF,

vs.

FOX DEN ACRES, INC., CMH
HOMES, INC., d/b/a LUV HOMES, AND
BRYANT REALTY, INC.,

    DEFENDANTS.

### ORDER STAYING ADVERSARY PROCEEDING AND COMPELLING ARBITRATION OF CLAIMS BROUGHT IN ADVERSARY PROCEEDING

This matter is before the Court on motions by CMH Homes, Inc. ("CMH"), Fox Den Acres, Inc. ("Fox Den"), and Bryant Realty, Inc. ("Bryant") to compel arbitration of the claims asserted in the adversary proceedings and to stay the present adversary proceeding pending the outcome of arbitration (the "Motions" [Dkt. Nos. 15, 26]). The Motions have been fully briefed [Dkt. Nos. 16, 22, 28]; the Court held oral argument on March 27, 2014; and the Motions are

ripe for adjudication. For the reasons set out herein, the Motions are **GRANTED** on the terms set out in this order.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtor Shannon S. Barker ("Debtor") filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code on November 30, 2012. On July 11, 2013, Debtor filed the present adversary proceeding as Plaintiff against the Defendants.

The adversary complaint makes allegations concerning the March 2003 transactions pursuant to which Debtor and her late husband (collectively the "Borrowers") acquired a manufactured home (the "Home") and the real property upon which the Home was placed (the "Land"). Debtor alleges that the purchases of the Home and the Land arose from a common transaction. The Borrowers purchased the Home from CMH, and in connection with that purchase, the Borrowers executed a Retail Installment Contract – Security Agreement dated February 21, 2003 (the "RIC") pursuant to which they were obligated to pay for the purchase in installment payments.[1] The Borrowers purchased the land from Fox Den, with Bryant serving as the seller's agent for at least some portion of the real estate transaction. Debtor alleges that the transaction with Fox Den began as a lease to purchase, but that, after twenty-four months, the Borrowers entered into a Real Estate Purchase Agreement and Negotiable Instrument with Fox Den.

In her complaint Debtor makes the following allegations:

- That a $10,000 down payment made by the Borrowers in 2003 was not apportioned properly between CMH and Fox Den so that Borrowers were making a ten percent down payment on the purchase of the Land, and this set of circumstances led to unfavorable

---

[1] In the RIC, CMH assigned the RIC to Vanderbilt Mortgage and Finance, Inc. ("VMF"). VMF is the current creditor for the RIC, and it is not a named party to the adversary proceeding. However, Debtor does make a number of allegations concerning VMF in the adversary complaint. To the extent Debtor wishes to bring claims against VMF, those claims should proceed in arbitration consistent with this Order. If Debtor decides to bring VMF into the action, she may add VMF as a party prior to the appointment of the arbitrator.

2

- and unfair financing terms for the purchase of the Land. Debtor also takes issue with other aspects of the financing with Fox Den.

- That, at the time of her husband's passing, Debtor was informed by VMF (a non-party to the litigation) that a credit life insurance policy that she had purchased had expired and did not provide coverage, which was inconsistent with Debtor's understanding of the insurance.

- That collection efforts by Defendant Fox Den and non-party VMF were inappropriate.

- That the Proof of Claim filed by Fox Den in the Chapter 13 case is inaccurate and should be disallowed.[2]

In connection with these allegations, Debtor brings the following causes of action: (1) breach of contract against Fox Den and Bryant; (2) unfair and deceptive acts and practices in violation of N.C. GEN. STAT. §§ 75-11, *et seq*, against Fox Den and Bryant; (3) fraud against Fox Den and Bryant; (4) conversion against Fox Den and Bryant; (5) violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*., against Fox Den and Bryant; (6) violation of North Carolina's statutory prohibited practices by collection agencies, N.C. GEN. STAT. §§ 58-70-90, *et seq*., against Bryant; (7) violations of the North Carolina Debt Collection Act, N.C. GEN. STAT. §§ 75-50, *et seq*., against Fox Den and Bryant; (8) intentional infliction of emotional distress, apparently against all Defendants; (9) negligent infliction of emotional distress, apparently against all Defendants; (10) unconscionability, apparently against all Defendants; (11) civil conspiracy; and (12) improper Proof of Claim against Fox Den only.

Defendants have each responded to the Complaint by seeking arbitration of all claims against them, respectively, based on the following arbitration provision in the RIC between CMH and Debtor:

---

[2] Paragraph 211(v) of the Complaint alleges that Fox Den's Proof of Claim is "defective" because it includes "[p]ast petition late fees which are not allowed by 11 U.S.C. § 362." At oral argument, Debtor's counsel asserted that with this allegation, Debtor is asserting a claim for violation of the automatic stay in bankruptcy. As is further explained below, this Court is retaining its ultimate authority to make bankruptcy rulings concerning the cause of action related to the Proof of Claim. This Court will determine the scope of the claim when the matter returns to this Court after arbitration.

3

> **ARBITRATION:** All disputes, claims or controversies arising from or relating to this contract, or the subject hereof, or the parties, including the enforceability or applicability of this arbitration agreement or provision and any acts, omissions, representations and discussions leading up to this agreement, hereto, including this agreement to arbitrate, shall be resolved by mandatory binding arbitration by one arbitrator selected by Seller with Buyer's consent. This agreement is made pursuant to a transaction in interstate commerce and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right to litigate disputes in court, but that they prefer to resolve their disputes through arbitration, except as provided herein. **THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL.** The parties agree and understand that all disputes arising under case law, statutory law and all other laws including, but not limited to, all contract, tort and property disputes will be subject to binding arbitration in accord with this contract. The parties agree that the arbitrator shall have all powers provided by law, the contract and the agreement of the parties. These powers shall include all legal and equitable remedies including, but not limited to, money damages, declaratory relief and injunctive relief. Notwithstanding anything hereunto the contrary, Seller retains an option to use judicial (filing a lawsuit) or non-judicial relief to enforce a security agreement relating to the Manufactured Home secured in a transaction underlying this arbitration agreement, to enforce the monetary obligation secured by the Manufactured Home or to foreclose on the Manufactured Home. The institution and maintenance of a lawsuit to foreclose upon any collateral, to obtain a monetary judgment or to enforce the security agreement shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of a counterclaim in a suit brought by Seller pursuant to this provision.

(Emphasis in original) (hereinafter the "Arbitration Agreement").

CMH contends that the claims asserted against it fall within the plain language of the Arbitration Agreement and, thus, should be compelled to arbitration. Fox Den and Bryant acknowledge that they do not have a signed arbitration agreement with Debtor and that they are

not signatories to the RIC, but they contend that the claims against them should be compelled to arbitration because Debtor has asserted claims against them alleging substantially interdependent and concerted misconduct among all of the Defendants, such that under prevailing law, Debtor is estopped from proceeding with the claims against Fox Den and Bryant in arbitration. At oral argument, counsel for CMH clarified that CMH is requesting arbitration of the causes of action against Fox Den and Bryan based on the manner in which those claims are pled. Debtor opposes arbitration of any of her causes of action.

## DISCUSSION

I. **CMH's Motion to Stay the Adversary Proceeding And to Compel Arbitration**

CMH argues that the Federal Arbitration Act, codified at 9 U.S.C. §§ 1, *et. seq.* (the "FAA"), and the decision authority thereunder require a stay of the adversary proceeding and an order requiring Debtor's causes of action to be arbitrated. Debtor raises objections to arbitration under North Carolina law and asserts that requiring arbitration of her causes of action would conflict with the Bankruptcy Code. It is this court's view that arbitration of the causes of action against CMH is appropriate and that there exists no conflict between arbitration of Debtor's causes of action and the Bankruptcy Code.

The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), premised upon a determination by Congress that arbitration includes "efficient, streamlined procedures" that "reduc[e] the cost and increas[e] the speed of dispute resolution." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 321, 131 S. Ct. 1740, 1749 (2011). Thus, when there is a

5

written agreement to arbitrate, that agreement must be enforced unless there is a legal impediment to its enforcement that is not preempted by the FAA. *Id.* Where, as here, the agreement to arbitrate includes a delegation clause, which delegates disputes about arbitrability to the arbitrator, the delegation clause must be enforced unless there is a specific challenge to the delegation clause that is separate and distinct from a challenge to the agreement to arbitrate overall. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Thus, as a general rule, a court should grant a motion to compel arbitration even if there is a challenge to arbitrability, if (1) there is a written agreement to arbitrate, (2) the agreement to arbitrate is signed by the parties, and (3) the agreement to arbitrate includes a delegation clause.

In some adversary proceedings filed in bankruptcy, further analysis is necessary to determine the propriety of arbitration. Specifically, arbitration may be denied if a party opposing arbitration carries its burden to demonstrate that "Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue[ ]" as shown by the statute's " 'text or legislative history' or from an inherent conflict between arbitration and the statute's underlying purposes." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987) (citations omitted). The text of the Bankruptcy Code does not preclude arbitration; therefore, congressional intent to override arbitration must be found, if at all, on a case-by-case basis only if there is " 'an inherent conflict between arbitration and the [Bankruptcy Code]'s underlying purposes.' " *Phillips v. Congelton, L.L.C.* (*In re White Mountain Mining Co., L.L.C.*), 403 F.3d 164, 168 (4th Cir. 2005) (quoting *McMahon,* 482 U.S. at 237) (hereinafter *White Mountain*).

In adjudicating whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code, courts generally ask first if a cause of action is

6

core or non-core. If the cause of action is not core, it generally must be submitted to arbitration. *See, e.g., The Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.)*, 479 F.3d 791, 796 (11th Cir. 2007); *Edwards v. Vanderbilt Mortgage & Fin., Inc. (In re Edwards)*, 2013 WL 5718565, at *2 (Bankr. E.D.N.C. Oct. 21, 2013); *TP, Inc., v. Bank of Am., N.A. (In re TP, Inc.)*, 479 B.R. 373, 382 (Bankr. E.D.N.C. 2012).

The inquiry can be somewhat more complex if a cause of action is core. In applying the "inherent conflict" test in the *White Mountain* case, the Fourth Circuit Court of Appeals declined to rule that there is a categorical proscription on arbitration of core causes of action. *White Mountain*, 403 F.3d at 169. The Court of Appeals did, however, determine that it was appropriate for the bankruptcy court to retain jurisdiction over certain claims because there was an "inherent conflict between arbitration and the purposes of the Bankruptcy Code . . . in [that] case." *Id*. at 170. Specifically, in *White Mountain*, the central issue in both the Chapter 11 bankruptcy and a related arbitration matter pending in England was whether sizeable payments made to a Florida coal company should be considered debt or equity, and any resolution of this issue by an arbitration panel would conflict with the Chapter 11 bankruptcy proceeding by, *inter alia*, interfering with the bankruptcy court's jurisdiction to determine classes of debt and equity holders and to classify claims of the estate. *Id.* at 169-70.

The United States Bankruptcy Court for the Eastern District of North Carolina generally retains jurisdiction of claims that are determined to be "constitutionally core" as that concept was discussed in *Stern v. Marshall*, 564 U.S. ___, 131 S.Ct. 2594, 2620 (2011). *See Moses v. Cashcall, Inc. (In re Moses)*, 2013 WL 53873, at *4 (Bankr. E.D.N.C. Jan. 3, 2013); TP, Inc., 479 B.R. at 383-87. In the *Stern* case, the United States Supreme Court decided bankruptcy courts lack the constitutional authority to enter a final judgment on a state law counterclaim that

7

is not resolved in the process of ruling on a creditor's proof of claim, 131 S.Ct. at 2620, but the Supreme Court did not have occasion to address the impact of its decision on arbitration of causes of action raised in bankruptcy. A cause of action is constitutionally core under *Stern* if it (1) arises from the bankruptcy itself or (2) necessarily needs to be resolved in the claims allowance process. *Id.* at 2618. If a cause of action is constitutionally core, then a bankruptcy court may deny a motion to compel arbitration so long as the *White Mountain* criteria for denying such a motion are satisfied, namely that the facts and circumstances of the case before the court reveal that there is " 'an inherent conflict between arbitration and the [Bankruptcy Code]'s underlying purposes' " and that "[a]rbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." *White Mountain*, 403 F.3d at 169 (internal citations omitted).

Even if a matter is constitutionally core, a bankruptcy court possesses broad discretion to grant a motion to compel arbitration if there is a written agreement to arbitrate and if doing so would be helpful to the court and would assist the bankruptcy court in exercising its bankruptcy jurisdiction. FED. R. BANK. P. 9019(c) ("On stipulation of the parties to any controversy affecting the estate the court may authorize the matter to be submitted to final and binding arbitration."); *Second Ave. Holdings, LLC v. Latimer (In re Latimer)*, 489 B.R. 844, 868-71 (Bankr. N.D. Ala. 2013) (granting motion to compel arbitration of state law claims underlying a claim of nondischargeability while retaining ultimate jurisdiction to adjudicate whether a claim was nondischargeable under the Bankruptcy Code). Arbitration of underlying state law causes of action that may bear on a bankruptcy issue promotes efficiency because of streamlined procedures available in arbitration and the limitations on appellate review. *Gilmer v.*

8

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) ("[B]y agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 276 (4th Cir. 1999) ("A hallmark of arbitration–and a necessary precursor to its efficient operation–is a limited discovery process.") (citing *Burton v. Bush*, 614 F.2d 389, 391 (4th Cir. 1980)).

In the case *sub judice*, CMH has presented the RIC, which is four pages in length, which is signed by the Borrowers on pages two and four, and which includes an agreement to arbitrate on the bottom of page three. The arbitration clause is set out prominently, and the RIC cautions, in boldface type, that the borrowers should read carefully before signing. The text of the arbitration clause is set out above on page 4 of this order, and it requires binding arbitration of the causes of action that Debtor brings against VMF. Debtor makes three arguments that the agreement to arbitrate should not be enforced as to CMH. As is explained further below, this Court is unpersuaded by Debtor's arguments.

Debtor first argues that it is unclear whether she executed the arbitration agreement. The basis for this argument is that Debtor's signature appears on page four of the RIC, whereas the arbitration clause is on page three, and Debtor does not recall whether the same version of page three was part of the RIC when she executed it. Debtor does not dispute, however, that she executed the RIC. Significantly, Debtor does not offer any evidence that page three was any different at the time she executed it, and a review of the RIC tends to indicate that it had not been modified, altered, or changed. Thus, contrary to Debtor's assertions, she has not presented the court with any ambiguity concerning whether the contract she executed included an arbitration

clause as was the case in *Routh v. Snap-On Tools Corporation*, 108 N.C. App. 268, 423 S.E.2d 791 (1992). Further, as the North Carolina Court of Appeals held in *Martin v. Vance*, the execution of an agreement charges the signatory with knowledge and assent to the contents of it, including an arbitration clause, and "where there is any doubt concerning the existence of an arbitration agreement, it should be resolved in favor of arbitration." 133 N.C. App. 116, 120, 514 S.E.2d 306, 309 (1999) (citing *Johnston County v. R.N. Rouse & 6*, 331 N.C. 88, 92, 414 S.E.2d 30, 32 (1992)). The Court **FINDS** and **CONCLUDES** that the Debtor and her late husband executed the RIC and that, at the time of execution, the RIC included the arbitration agreement.

Debtor next argues that the court should not compel arbitration because she modified the RIC in bankruptcy pursuant to 11 U.S.C. § 365(p)(3). The provision of the Bankruptcy Code cited by Debtor applies to executory leases of personal property and thus has no application here. The RIC is not a lease and is not executory. *See* 1 GINSBERG & MARTIN ON BANKRUPTCY § 7.01[B] (5th ed. 2012-2 Supp.) (defining "executory contract"). In any event, modification of an executory contract would not constitute rejection of an arbitration agreement. *Selby's Mkt., Inc. v. PCT (In re Fleming Cos.)*, 2007 WL 788921, at *3 (D. Del. Mar. 16, 2007). Accordingly, the court **CONCLUDES** that 11 U.S.C. § 365(p)(3) and the filing of Debtor's petition for relief under the Bankruptcy Code did not result in modification or rejection of the Arbitration Agreement.

Debtor next argues that arbitration of her claims against CMH would be inconsistent with the Bankruptcy Code. However, Debtor's causes of action against CMH are state law causes of action that do not arise under a provision of the Bankruptcy Code, CMH is not a current creditor of Debtor, and CMH has not submitted a claim against the estate. Accordingly, Debtor's causes

of action against CMH are not core. *See* 28 U.S.C. § 157(b)(2). Even if Debtor's causes of action against CMH were core, or even constitutionally core, there would be no conflict between arbitration and the underlying purposes of the Bankruptcy Code, as there would be no prejudice to the administration of the bankruptcy case and no negative impact on the determination of bankruptcy issues if Debtor's causes of action against CMH are arbitrated. To the contrary, it would be helpful to the Court and more efficient and cost-effective for the parties if Debtor's state law causes of action against CMH proceed in arbitration, after which this court can address any bankruptcy implications of the arbitrator's decision concerning the state law claims. Accordingly, the Court **CONCLUDES** that there is no inherent conflict between arbitration of Debtor's causes of action against CMH and the underlying purposes of the Bankruptcy Code.

In her fourth and final argument concerning CMH's motion to compel arbitration, Debtor contends that the Arbitration Agreement is unconscionable. Debtor offers no affidavit or other testimony in support of her argument concerning unconscionability and instead relies upon the RIC itself and arguments premised upon the North Carolina Supreme Court's analysis in *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 102-03, 655 S.E.2d 362, 370 (2008). As the North Carolina Court of Appeals recently observed, *Tillman*'s unconscionability analysis has been superseded by *AT&T Mobility LLC v. Concepcion* and *American Express Co. v. Italian Colors Restaurant*, ___ U.S. ___, 133 S. Ct. 2304 (2013). *Torrence v. Nationwide Budget Fin.*, 753 S.E.2d 802, 811 (N.C. Ct. App. 2014) ("[T]he holdings of the North Carolina Supreme Court in *Tillman* conflict with those of the United States Supreme Court in *Concepcion* and *Italian Colors*. Ultimately, we are bound by the decisions of the United States Supreme Court construing federal laws, such as the FAA."); *Knox v. First S. Cash Advance*, 753 S.E.2d 819, 822 (N.C. Ct. App. 2014). In any event, the Arbitration Clause includes a delegation clause, which

11

reserves disputes about arbitrability for determination by an arbitrator, and Debtor has not made a specific and separate challenge to the delegation clause. Consequently, Debtor's unconscionability challenge to the Arbitration Agreement should be decided by an arbitrator in accordance with the United States Supreme Court's decision in *Rent-A-Center, West, Inc.* Accordingly, the court **FINDS** and **CONCLUDES** that Debtor has not carried her burden to raise an unconscionability challenge that precludes arbitration of Debtor's causes of action and **CONCLUDES** that any issues Debtor may raise with respect to arbitrability should be decided by an arbitrator.

Based on the foregoing analysis, this court **CONCLUDES** that CMH's motion to stay the adversary proceeding as to CMH and to compel arbitration of the causes of action against CMH should be and hereby is **GRANTED**. The adversary proceeding is stayed and the causes of action against CMH must be arbitrated in accordance with the court's instructions in Section III of this Order.

II.     **Fox Den's and Bryant's Motion to Compel Arbitration**

Fox Den and Bryant are not parties to the RIC between Debtor and CMH; however, they each seek arbitration of the claims against them under the arbitration provision of the RIC. Fox Den and Bryant contend that Debtor is estopped from avoiding arbitration of her causes of action against them based on the manner in which she has pled her claims. In particular, Fox Den and Bryant assert that the adversary complaint raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract. This court agrees.

Generally, only signatories to an agreement to arbitrate may seek to compel arbitration under that agreement. *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157,

160 (4th Cir. 2004). However, a signatory to an agreement to arbitrate may be estopped from opposing arbitration of claims against a nonsignatory to that agreement if: (1) " 'the signatory to a written agreement containing an arbitration clause must "rely on the terms of the written agreement in asserting its claims" against the non-signatory,' " or (2) " ' "the signatory raises allegations of … substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." ' " *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 395-96 (4th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) ("[A] litigant who was not a party to the relevant arbitration agreement may invoke [the FAA] if the relevant state contract law allows him to enforce the agreement."); *Klopfer v. Queens Gap Mountain, LLC*, 816 F. Supp. 2d 281, 292 n.5 (W.D.N.C. 2011) ("North Carolina's law of equitable estoppel is the same as Fourth Circuit law.").

Fox Den and Bryant seek to proceed under the exception for allegations of "substantially interdependent and concerted misconduct." With respect to that exception, the Fourth Circuit Court of Appeals has held that "there must be allegations of coordinated behavior between a signatory and non-signatory defendant and that the claims against both the signatory and non-signatory defendants must be based on the same facts, be inherently inseparable, and fall within the scope of the arbitration clause." *Aggarao v. MOL Ship Mgmt. Co.,* 675 F.3d 355, 374 (4th Cir. 2012) (internal citations and quotations omitted).

In the present case, Debtor's state law causes of action against Fox Den and Bryant fall within the "substantially interdependent and concerted misconduct" exception. Specifically, Debtor alleges that the purchases of the Home and the Land began as a common transaction; that there was concerted misconduct in the application of the $10,000 down payment, which in turn

13

led both to unfavorable financing terms for the purchase of the Land and to collection activities with which the Debtor takes issue. Further, the Debtor has alleged a claim for civil conspiracy in which the Debtor asserts that:

> Upon information and belief, the Defendants in this case formed an agreement between themselves to do all of the unlawful acts alleged herein and to do all of the lawful acts alleged herein in unlawful ways.
>
> The acts that created this civil conspiracy resulted in injuries to the Debtor including, but not limited to, financial injury, emotional distress and mental suffering.
>
> These wrongful acts were done by one or more of the conspirators pursuant to the common scheme and in furtherance of the common object.
>
> The liability of the conspirators is joint and several, in that all Defendants are equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others in furtherance of such common design.

Thus, Debtor alleges common facts, which are inherently inseparable, and inasmuch as Debtor apparently seeks to make CMH liable for the conduct of the nonsignatory Defendants, Debtor's claims fall within the scope of the arbitration provision of the RIC between Debtor and CMH.

Further, given the manner in which Debtor has pled her causes of action, it is inappropriate for the claims against the Defendants to proceed in different fora. Multiple proceedings would result in increased costs and confusion; there would be a risk of inconsistent verdicts if the claims proceed separately; and there is a possibility of crossclaims that could not be adjudicated as effectively if there is more than one proceeding among the parties based on the same claims. Accordingly, the court **FINDS** that the adversary complaint alleges substantially interdependent and concerted misconduct among all of the Defendants and **CONCLUDES** that Debtor is therefore estopped from opposing Fox Den's and Bryant's motion to compel

arbitration of the causes of action asserted them, even though Fox Den and Bryant are nonsignatories to the agreement to arbitrate.

Fox Den also seeks arbitration of Debtor's cause of action alleging that Fox Den's proof of claim is improper and alleging that Fox Den violated 11 U.S.C. § 362 by including certain charges in the proof of claim. This cause of action, alone, raises a claim under a specific provision of the Bankruptcy Code and involves the application of bankruptcy law that must be applied by the court. Accordingly, this court will retain ultimate jurisdiction of the cause of action for improper proof of claim. However, the court **FINDS** and **CONCLUDES** that it would be helpful to the court and would aid the court in exercise of its bankruptcy jurisdiction to have the arbitrator determine the facts concerning this claim, after which the matter will return to this court for application of the Bankruptcy Code to this particular cause of action.

Based on the foregoing analysis, this court **CONCLUDES** that Fox Den's and Bryant's motion to stay the adversary proceeding and to compel arbitration of the causes of action against them should be and hereby is **GRANTED**. The adversary proceeding is stayed and this matter must be arbitrated in accordance with the court's instructions in Section III of this Order.

### III.   The Court's Instructions Concerning Arbitration

Because the matters to be arbitrated involve at least one claim over which this court is retaining ultimate jurisdiction, and because the resolution of the claims against Fox Den otherwise may impact the administration of the bankruptcy case, this court will exercise its discretion to retain supervisory and enforcement authority with respect to the arbitration. In exercise of this jurisdiction, the court hereby **ORDERS** the parties (and to the extent applicable, the arbitrator) to comply with the following instructions:

> 1.    The Arbitration Agreement provides that the causes of action "shall be resolved by mandatory binding arbitration by one arbitrator selected by Seller with

15

Buyer's consent." Within ten days of the entry of this Order, CMH shall propose at least five candidates to serve as the arbitrator. Within twenty days after entry of this Order, Debtor, Fox Den, and Bryant shall either agree to use one of the candidates proposed by CMH or they shall propose additional candidates. If the parties are initially unable to agree on an arbitrator, they shall make good faith efforts to select an agreed-upon arbitrator within thirty days after the entry of the Order. The parties shall promptly inform the court in writing of the name of the person selected to serve as the arbitrator. If the parties are unable to agree upon an arbitrator, the court will appoint an arbitrator pursuant to 9 U.S.C. § 5. The parties may agree, unanimously and in writing, to use more than one arbitrator, and if they so agree, they shall inform the court consistent with deadlines set out in this Order. If the parties do not agree unanimously and in writing to use more than one arbitrator, then they must proceed with one arbitrator as set out in the Arbitration Agreement.

      2.     The parties shall provide the arbitrator with sufficient information to permit him to determine whether he has any conflicts that would create the appearance of impropriety if he or she serves as the arbitrator. The proposed arbitrator shall perform a diligent conflict check and shall notify the parties of any conflicts. If there are no conflicts, the arbitrator shall execute a verified and sworn acknowledgement in which the arbitrator swears or affirms, under oath, before a notary that he or she will serve as a fair and impartial neutral and will determine the facts and apply the law correctly to the best of his or her ability.

      3.     The Arbitration Agreement provides that it "shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1." Accordingly, the arbitrator shall conduct the arbitration proceedings in accordance with 9 U.S.C. § 7.

      4.     The arbitration hearing must begin within ninety days of the appointment of an arbitrator and must be concluded within thirty days after it begins. The arbitrator shall issue a written, reasoned decision not later than thirty days after the conclusion of the arbitration hearing.

      5.     The parties shall provide status reports to the court every thirty days and shall promptly notify the court in writing of the following items: (1) the date when the arbitration hearing is scheduled to begin; (2) the date when the arbitration hearing concludes; (3) the date when the arbitrator's award is due. Further, the parties shall promptly notify the court if any deadline established in this Order will not be met and the reason(s) why the deadline will not be met.

      6.     Upon entry of an award by the arbitrator, the parties shall notify the court in writing of the substance of the award.

      7.     The parties shall have thirty days from the date of the transmission of the arbitrator's award to file any motions to confirm, modify, or vacate the award, and the party filing any such motions shall be responsible for noticing a hearing on the same.

      8.    The court will hold a hearing to determine the bankruptcy issues concerning the cause of action objecting to Fox Den's proof of claim at the same time the court conducts a hearing on any motions to confirm, modify, or vacate the arbitrator's award.

## IV. <u>Decree</u>

The motions of CMH, Fox Den, and Bryant are **GRANTED**.  Pursuant to 9 U.S.C. § 3, the adversary proceeding is **STAYED**.  Pursuant to 9 U.S.C. § 4, Debtor's causes of action are **COMPELLED** to mandatory, binding arbitration in accordance with the Arbitration Agreement.  The parties and the arbitrator are **ORDERED** to comply with the deadlines and instructions set out in this Order.

    **IT IS SO ORDERED.**

This Order has been signed electronically.                      United States Bankruptcy Court
The Judge's signature and Court's seal
appear at the top of the Order.